## Reading Trust Company *v.* Mattes, Appellant.

*Arbitration—Choosing arbitrators—Prothonotary — Delegation of power—Clerks.*

A prothonotary of a Court of Common Pleas has the power to delegate to a clerk in his office who is not a regularly appointed deputy the right to exercise his statutory functions in choosing arbitrators in compulsory arbitration proceedings.

Argued April 27, 1915. Appeal, No. 346, January T., 1914, by defendant, from order of C. P. Lackawanna Co., No. 1247, October T., 1913, discharging rule to set aside award of arbitrators in case of Reading Trust Company v. Mary G. Mattes and Mary G. Mattes, Executrix and Devisee of Cornelia W. Mattes, deceased. Before Mestrezat, Elkin, Stewart, Moschzisker and Frazer, JJ. Affirmed.

Scire facias sur mortgage

1915.]    Assignment of Error—Opinion of the Court.

Rule to set aside award of arbitrators.

The opinion of the Supreme Court states the case.

The arbitrators returned an award in favor of the plaintiff. Defendant thereupon took a rule to show cause why the award should not be set aside, which rule was discharged. Defendant appealed.

*Error assigned* was in discharging the rule to set aside the award.

*Philip V. Mattes,* for appellant.

*William Jenkins Wilcox,* with him *William A. Wilcox,* for appellee.

OPINION BY MR. JUSTICE STEWART, July 3, 1915:

A rule to choose arbitrators issued at the instance of the plaintiff in the scire facias. The matter was so proceeded with that on the day appointed arbitrators were selected, who in due time returned an award in favor of the plaintiff. Immediately thereupon a rule issued at the instance of the defendant to show cause why the award should not be set aside, on the ground that the arbitrators had not been chosen in the manner required by law, inasmuch as, the defendant not appearing on the day appointed for their selection, the selection had been made by the plaintiff in the writ and one Wenzel, a clerk in the office of the prothonotary, neither the prothonotary nor his deputy participating. The answer admitted these averments, but asserted that the said Wenzel had been for years a clerk in the office of the prothonotary, and that as such he was "fully and legally authorized by John D. Griffiths, prothonotary, to issue writs, enter judgments, tax costs, attest satisfactions, choose arbitrators, and in general to do all and every the duties, offices and powers of the prothonotary." Upon hearing the court discharged the rule. Stripped of all irrelevant matter, whether introduced in petition or answer, the

appeal raises the single question of the power of the prothonotary to delegate to another, not a regularly appointed deputy, the right to exercise his statutory functions in connection with compulsory arbitration proceedings.

Were the question an open one with us very much might be said in support of the appellant's contention that such of the functions as are exercisable by a prothonotary in compulsory arbitration proceedings, are judicial as distinguished from ministerial, and are therefore nondelegable; but it is not. The case of Reigart v. McGrath, 16 S. & R. 65, has too long stood unchallenged to be open to question now. Clearly the effect of the decision there was to sanction a practice which had grown up in the State according to which clerks in the prothonotary's office had discharged the duties of the prothonotary in the respect indicated, and it has to this day provoked no legislative interference or correction of the practice. After defining the distinction between judicial and ministerial functions, with special reference to a prothonotary's duty in arbitration proceedings, GIBSON, J., in the case cited says, "But, however this may be, it is certain that inferior offices which involve no peculiar trust, may be executed by deputy; and such I take to be the office of the prothonotary of the Common Pleas, or clerk of the Mayor's Court of this city. In construing statutes, regard must be had to public convenience as an object of primary consideration, and how far this will be promoted by the construction which I have indicated, may be judged by the practice that has immemorially prevailed. The duties of almost every prothonotary in the State are performed either wholly or in part, by clerks, who act under a parol authority, and often in the absence of the principal, nor can it be otherwise as long as the principal shall be subject to those contingencies which happen to all men. Sickness may prevent him from executing his office in person; whilst the business of suitors may be

too urgent to admit of delay, and were they to await his recovery, the right of appeal for instance might be frustrated by his inability to take the necessary bail and administer the oath within the period prescribed by law. Nor can an inference unfavorable to the argument be raised from the fact that the power of substitution has been conferred on registers of wills in express terms. These are to every intent judicial offices, and such a provision was therefore not only expedient but indispensable. But this, on the other hand, discloses the opinion of the legislature as to the requirements of public convenience in similar cases; for had the legislature supposed that prothonotaries were destitute of the power in question, it is impossible to doubt that they would have been invested with it as readily as were the registers of wills." We have not been pointed to any case in which the view there held has been in the least modified or even adversely criticized. We must regard it as decisive of the question here raised. The assignments are overruled and the judgment is affirmed.